UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| ESTATE OF NANCY CUNDIFF, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BLACKHAWK MINING, LLC, *et al.*, <br><br> Defendants. | Civil No. 5:23-cv-00246-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Plaintiffs' Motion to Remand. [R. 10.] The face of Plaintiffs' Complaint reveals a lack of complete diversity amongst the parties. Nevertheless, Defendants seek to remove this action to federal court based on diversity jurisdiction. In support of removal, Defendants contend that the non-diverse Defendant was fraudulently joined. The Plaintiffs disagree. Further, Plaintiffs state that Defendants have not proven an amount in controversy sufficient to achieve diversity jurisdiction. Finally, Plaintiffs request attorney fees for what they characterize as a frivolous removal effort. The Court agrees with the Plaintiffs that the case should be remanded. For the reasons that follow, Plaintiffs Motion to Remand **[R. 10]** is **GRANTED IN PART and DENIED IN PART**.

I

In July 2022, eastern Kentucky experienced catastrophic flooding. [R. 1-1 at 3.] As a result, the Plaintiffs lost life, limb, and property.[1]  *Id.*  Before the disaster, Defendants

---

[1] The facts recounted here are taken from Plaintiffs' Complaint. [R. 1-1.] *See also* 5:23-cv-00247-GFVT, an adjacent action also removed to this Court.

Blackhawk and Pinebranch (the "mining Defendants") were strip-mining near the Plaintiffs' homes. *Id.* Plaintiffs allege that the damage they incurred from the flooding was exacerbated by the mining Defendants' improper operation of a number of silt ponds. *Id.* at 3. Specifically, "[t]he failure of the silt ponds caused debris and excessive water to flow onto the Plaintiffs' properties[.]" *Id.* at 4.

Plaintiffs further state that "in the weeks and months before the flooding," Defendants Kentucky Power Company and Asplundh Tree Expert performed tree removal in the area. *Id.* at 6. They allege that Asplundh's employees "left the streams and creeks filled with branches, limbs and trunks of trees instead of removing them from the property." *Id.* Asplundh's failure to remove this debris, Plaintiffs contend, aggravated the damages they incurred from the flooding. *Id.* at 4–6.

Plaintiffs are Kentucky residents. [R. 1 at 2.] The Mining Defendants are residents of Delaware and the Czech Republic. *Id.* at 3. Asplundh is a resident of Pennsylvania and Delaware. *Id.* at 4. Kentucky Power is a resident of Kentucky. *Id.* The mining Defendants filed a notice of removal in this Court based on diversity jurisdiction. [R. 1]; 28 U.S.C. § 1332. Now, Plaintiffs move to remand for want of complete diversity and failure to meet the amount in controversy requirement. [R. 10.]

**II**

A defendant may remove a civil action brought in state court to federal court only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. §§ 1441, 1446. This Court has original federal question jurisdiction over civil actions that arise under the "Constitution, laws, or treaties" of the United States pursuant to 28 U.S.C. § 1331. This Court also has original "diversity" jurisdiction over all civil actions when "the matter

2

in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the dispute is between parties who are "citizens of different States." *See* 28 U.S.C. § 1332(a). Federal courts are courts of limited jurisdiction, and therefore any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (citations omitted). In determining the appropriateness of remand, a court must consider whether federal jurisdiction existed at the time the removing party filed the notice of removal. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Furthermore, the removing defendant bears the burden of showing that removal was proper. *Fenger v. Idexx Lab'ys, Inc.*, 194 F. Supp. 2d 601, 602 (E.D. Ky. 2002) (citations omitted). The general rule is that removal based on diversity of citizenship is proper only where there is complete diversity "both at the time that the case is commenced and at the time that the notice of removal is filed." *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999).

### A

Here, the Complaint on its face does not satisfy the complete diversity requirement of 28 U.S.C. § 1332. Plaintiffs are residents of Kentucky. [R. 1-1 at 3.] The mining Defendants are residents of Delaware and the Czech Republic. [R. 1 at 3.] Asplundh is a resident of Delaware and Pennsylvania. *Id.* at 4. Kentucky Power is also considered a resident of Kentucky, which potentially precludes complete diversity in this matter. [R. 1-1 at 2.] Regardless of whether the case is remanded or remains before this Court on the basis of diversity jurisdiction, Kentucky is the forum state and its substantive law will be followed. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006). So long as the case remains in federal court, federal procedural

law will govern as applicable, including in establishing the appropriate standards for fraudulent joinder and dismissal. *Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 408 (6th Cir. 2006).

**1**

Despite the Complaint's apparent failure to meet diversity requirements, Defendants contend that Kentucky Power was fraudulently joined and that its citizenship should therefore be ignored when determining whether diversity jurisdiction is present. [R. 14.] Fraudulent joinder is a "judicially created doctrine that provides an exception to the requirement of complete diversity."[2] *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). "The primary purpose of fraudulent joinder is to ensure that plaintiffs do not avoid diversity jurisdiction by pleading illegitimate claims involving non-diverse parties." *Taco Bell Corp. v. Dairy Farmers of Am., Inc.*, 727 F. Supp. 2d 604, 607 (W.D. Ky. 2010). Moreover, the doctrine applies "when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome-Duncan, Inc.*, 176 F.3d at 907). If the Plaintiffs' claim has no hope of success, then the "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Saginaw Hous. Comm'n*, 576 F.3d at 624 (quoting *Coyne*, 183 F.3d at 493).

The mining Defendants, the removing parties, bear the burden of proving fraudulent joinder and must "present sufficient evidence that [the Plaintiffs] could not have established a cause of action against [Kentucky Power] under state law." *Coyne*, 183 F.3d at 493. "[T]he defendant bears a heavy burden to prove fraudulent joinder[.]" *Walker v. Philip Morris USA,*

---

[2] "Despite its name, fraudulent joinder does not require any showing of improper motive or fraud." *Cammack New Liberty, LLC v. Vizterra, LLC*, No. 3:09–15–DCR, 2009 WL 2043568, at *2 (E.D. Ky. July 13, 2009).

4

*Inc.*, 443 F. App'x 946, 953 (6th Cir. 2011) (citing *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)). Any contested issues of fact or ambiguities in state law should be construed in the non-removing party's favor. *Walker*, 443 F. App'x at 953; *see also Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). Indeed, if Plaintiffs' claims against Kentucky Power have "even a 'glimmer of hope,' there is no fraudulent joinder." *Murriel-Don Coal Co. v. Aspen Ins. UK*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011) (citation omitted).

**2**

Defendants have not met their "heavy burden" of establishing that Kentucky Power was fraudulently joined. *Walker*, 443 F. App'x at 953. In their Complaint, Plaintiffs allege that Kentucky Power "contracted with the Defendant, Asplundh, to perform tree cutting and removal services in the weeks and months before the flooding happened." [R. 1-1 at 6.] Plaintiffs further allege that "[a]fter being contracted by Kentucky Power Company, Asplundh's employees left the streams and creeks filled with branches, limbs and trunks of trees instead of removing them from the property." *Id.* They assert that this tortious conduct exacerbated the damage to their property. *Id.* These allegations are the only allegations in the Complaint concerning Kentucky Power. As such, it is reasonable to infer that Plaintiffs seek to hold Kentucky Power vicariously liable for the actions of Asplundh. Whether this is possible depends upon whether Asplundh was retained as an employee or an independent contractor.

Is it well established in Kentucky that an entity is not vicariously liable for the negligence of the employees of its independent contractor. *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003), *modified* (Sept. 23, 2003). However, an employer in Kentucky may be vicariously liable for the torts of its employees (and their employees as sub-agents). *Id.* Additionally, Kentucky recognizes causes of action for negligent hiring and supervision as to an

employee; but not as to an independent contractor. *Dukes v. Mid-E. Athletic Conf.*, 213 F. Supp. 3d 887, 891 (W.D. Ky. 2016); *Smith v. Ky. Growers Ins. Co.,* No. 2001-CA-001624-MR, 2002 WL 35628958, at *2 (Ky. Ct. App. Nov. 1, 2002). Determining Asplundh's status in this particular case will require a contextualized and fact intensive inquiry.[3] *Ahart*, 667 S.W.3d at 68. Aside from the summary allegations in the Complaint, the Court has no information from which to conduct such an inquiry. In any event, that inquiry is more appropriately left to the Kentucky courts, who are experts on questions of Kentucky law. *See, e.g.*, *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 818 (1989) ("[Q]uestion[s] of state law [fall] within the special expertise of the [state] courts."). The mining Defendants resist this conclusion, citing unrelated cases from other jurisdictions where Asplundh was found to be an independent contractor. [R. 14 at 5.] But those cases are not dispositive as to Kentucky law.

Because Plaintiffs' claims against Kentucky Power carry at least "a glimmer of hope, there is no fraudulent joinder." *Murriel-Don Coal Co.*, 790 F. Supp. 2d at 597 (citation omitted); *Cole*, 728 F. Supp. at 1307 ("'Where there is doubt as to federal jurisdiction, the doubt should be construed in favor of remanding the case to the State court where there is no doubt as to its jurisdiction.'" (quoting *Walsh v. Am. Airlines, Inc.*, 264 F. Supp. 514, 515 (E.D. Ky. 1967))). Therefore, the Court agrees with the Plaintiffs that the case should be remanded for want of complete diversity.

---

[3] Kentucky considers the following factors in assessing whether an "whether an individual is acting as an employee or independent contractor:" "'the nature of the work as related to the business generally carried on by the alleged employer, the extent of control exercised by the alleged employer, the professional skill of the alleged employee, and the true intentions of the parties.'" *JSE, Inc. v. Ahart*, 667 S.W.3d 60, 68 (Ky. Ct. App. 2020), *aff'd*, No. 2020-SC-0154-WC, 2021 WL 1681239 (Ky. Apr. 29, 2021) (quoting *Chambers v. Wooten's IGA Foodliner*, 436 S.W.2d 265, 266 (Ky. 1969)).

**B**

The parties next dispute whether the amount in controversy is sufficient to achieve diversity jurisdiction. [R. 1; R. 10.] Because the Court has already resolved the fraudulent joinder issue in favor of remand, it will address the amount in controversy only briefly.

Kentucky's procedural rules have the potential to cause confusion for federal district courts attempting to assess amount in controversy. The Kentucky Rules of Civil Procedure prohibit plaintiffs from articulating the specific amount that they seek to recover in their complaint. *See* Ky. R. Civ. P. 8.01(2) ("In any action for unliquidated damages the prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court[.]"). To further complicate matters, Kentucky permits plaintiffs to recover an amount of damages greater than the amount requested in the complaint. Ky. R. Civ. P. 54.03(2) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings.*") (emphasis added).

But Congressional amendments to 28 U.S.C. § 1446 guide district courts as they assess amount in controversy against the backdrop of the aforementioned procedural rules. In particular, when "the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded," removal is appropriate "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. §§ 1446(c)(2)(A)(ii), (c)(2)(B); *see also MacKenzie v. GGNSC Stanford, LLC*, No. 13–344–KSF, 2013 WL 6191853, at *2 (E.D. Ky. Nov. 26, 2013); *Proctor v. Swifty Oil Co.*, No. 3:12–CV–00490–TBR, 2012 WL 4593409, at *2 (W.D. Ky. Oct. 1, 2012). Thus, because the burden is on the party seeking removal, the

7

Defendants must initially show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum of $75,000. *Proctor*, 2012 WL 4593409, at *2.

The mining Defendants assert that the amount in controversy surpasses this threshold because the results of the flooding were "catastrophic" and because the Plaintiffs request punitive damages. [R. 1 at 6–7.] Still, the Plaintiffs fail to plead the amount in controversy with any specificity, and the Defendants have not conducted an independent inquiry into the amount. [R. 1-1 at 6–7; R. 1 at 6–8.] In any event, the Court need not address the minutiae of the issue because it has already resolved the fraudulent joinder question in favor of remand. *See* 28 U.S.C. § 1332 (articulating conjunctive requirements).

## C

Finally, Plaintiffs request attorney fees for the cost of litigating what they characterize as a groundless removal effort by Defendants. [R. 10-3.]

In an order remanding an action to state court, a district court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Such an award serves "to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party[.]" *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005). Accordingly, fee awards are appropriate only when "the removing party lacked an objectively reasonable basis for seeking removal." *Powers v. Cottrell, Inc.*, 728 F.3d 509, 515 (6th Cir. 2013) (quoting *Martin*, 546 U.S. at 141). Whether the cited basis for removal was objectively unreasonable is left to the district court's discretion. *Id.*

Plaintiffs argue they should be awarded fees because the mining Defendants failed to conduct "discovery regarding the nature of the claims being presented against Kentucky Power[.]" [R. 10-3 at 1.] The Court disagrees. Despite its ultimate decision to remand, the

8

Court cannot say that Defendants' removal arguments were so objectively unreasonable as to warrant the award of attorney fees. *See Murriel-Don Coal Co.*, 790 F. Supp. 2d at 600 ("[Defendants'] arguments . . . although they did not carry the day, were at least reasonable arguments."). Accordingly, the Court declines to exercise its discretion to award attorney fees to the Plaintiffs.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiffs' Motion to Remand **[R. 10]** is **GRANTED**;

2. Plaintiffs' Request for Attorney's Fees **[R. 10]** is **DENIED**;

3. This matter is **REMANDED** to Breathitt Circuit Court and **STRICKEN** from the Court's active docket.

This the 7th day of February, 2024.

Gregory F. Van Tatenhove
United States District Judge

9